**STATE OF WISCONSIN**   :   **CIRCUIT COURT**   :   **MILWAUKEE COUNTY**
**CIVIL DIVISION**

Honorable Glenn H Yamahiro-34
Branch 34

YASMEEN DANIEL, Individually, and
as Special Administrator of the
ESTATE OF ZINA DANIEL HAUGHTON
P.O. Box 510233
Milwaukee, WI 53203,

            Plaintiffs,

     vs.

ARMSLIST, LLC, an Oklahoma Limited Liability
Company,
616 Magee Avenue
Jeannette, Pennsylvania 15644

Case No.

**COMPLAINT**

Wrongful Death: 30105
Personal Injury - Other: 30107

BRIAN MANCINI,
300 Heinz Street
Pittsburgh, Pennsylvania 15212

BROC ELMORE,
4212 Middlefield Court
Norman, Oklahoma 73072

JONATHAN GIBBON,
616 Magee Avenue
Jeannette, Pennsylvania 15644

DEVIN LINN,
6378 Fairdale Drive
Cedarburg, Wisconsin 53012

ABC INS. CO., the fictitious name for an unknown
insurance company,

DEF INS. CO., the fictitious name for an unknown
insurance company, and

1



EXHIBIT
1
PENGAD 800-631-6989

ESTATE OF RADCLIFFE HAUGHTON, by his
Special Administrator Jennifer F. Valenti,
6604 West Glenbrook Road
Brown Deer, Wisconsin 53223

       Defendants.

NOW COME the above named plaintiffs, by their attorneys, CANNON & DUNPHY, S.C., and as and for their claims for relief, allege and show to the Court as follows:

## INTRODUCTION

1.     For over a decade, Zina Daniel Haughton was the victim of domestic abuse at the hands of her violent husband, Radcliffe Haughton.

2.     Zina Daniel Haughton reached a breaking point on October 3, 2012 when Radcliffe Haughton assaulted her. She called 911 and, after the police arrived, moved out of the couple's home. The next day, Radcliffe Haughton arrived at Zina Daniel Haughton's workplace wielding a knife and slashed the tires of her car.

3.     On October 8, 2012, Zina Daniel Haughton asked a Wisconsin court to issue a restraining order against Radcliffe Haughton. After a hearing the following week, where Zina Daniel Haughton testified that her husband had made threats to her life that "terrorize my every waking moment," the court granted her request and prohibited Radcliffe Haughton from approaching his wife for four years, the maximum time permitted under Wisconsin law. The court also prohibited Radcliffe Haughton from possessing a firearm until October 18, 2016, finding "clear and convincing evidence" that he might use a firearm to harm Zina Daniel Haughton and endanger public safety.

2

4. Federal and state law made it a crime for Radcliffe Haughton to possess a gun after the court issued its restraining order.

5. Nevertheless, on October 20, 2012, Radcliffe Haughton acquired an FNP-40 semiautomatic handgun, serial number 61CMP11777 (the "Murder Weapon"), in a cash deal brokered by Defendant Armslist, LLC d/b/a Armslist Firearms Marketplace ("Armslist"). With Armslist's help, Radcliffe Haughton purchased the gun from Defendant Devin Linn, and the transaction was completed in the front seat of Devin Linn's car in a McDonald's parking lot.

6. Defendant Armslist designed a ready marketplace where it was foreseeable that prohibited persons such as Radcliffe Haughton would be able to buy firearms even though they are not legally permitted to possess them, no questions asked.

7. On October 21, 2012, Radcliffe Haughton walked into Zina Daniel Haughton's workplace, the Azana Spa and Salon in Brookfield, Wisconsin ("Azana"), and, with the semiautomatic handgun he purchased the day before, murdered his wife and two of her co-workers and wounded four others. One of the first bullets to leave Radcliffe Haughton's gun hit Zina Daniel Haughton. She lay bleeding on the floor as Radcliffe Haughton cased the salon, firing at others, some fatally. Several minutes later, Radcliffe Haughton returned to his wife to shoot her in the head, killing her. Radcliffe Haughton then shot himself.

8. This action seeks justice for Zina Daniel Haughton and her adult daughter, Yasmeen Daniel – who witnessed Radcliffe Haughton's violence that day at Azana – against Armslist, its principals, Devin Linn, and Radcliffe Haughton, each of whom caused Zina Daniel Haughton's death and her daughter's ongoing suffering.

3

9.     This lawsuit does not challenge the right of law-abiding citizens to keep and bear arms. This lawsuit also does not challenge the responsible businesses that sell guns to law-abiding citizens. This lawsuit is about the criminal use of guns and a company that knowingly and for profit designed and effectuated a marketplace to facilitate, enable, and supply the criminal market with lethal weapons to which it would otherwise not have access, resulting in the foreseeable harm in this case.

## PARTIES

10.     Plaintiff Yasmeen Daniel, a Wisconsin resident, county of Milwaukee, P.O. Box 510233, Milwaukee, WI 53203, is the oldest daughter and statutory heir of her late mother, Zina Daniel Haughton. Yasmeen Daniel was present at Azana on October 21, 2012 and witnessed the violent acts committed by Radcliffe Haughton.

11.     Decedent Zina Daniel Haughton was, at the time of the incident that is the subject of this lawsuit, an adult citizen and resident of Wisconsin, county of Milwaukee, residing at 6604 W. Glenbrook Road, Brown Deer, Wisconsin 53223. Zina Daniel Haughton died on October 21, 2012. Her daughter, Yasmeen Daniel, serves as Special Administrator of the Estate of Zina Daniel Haughton (the "Zina Daniel Haughton Estate"), and brings this action both in her individual capacity and on behalf of the estate ("Plaintiffs" shall refer collectively to Yasmeen Daniel, individually, and as Special Administrator of the Zina Daniel Haughton Estate).

12.     On information and belief, Defendant Armslist is an Oklahoma limited liability company with a primary place of business at 616 Magee Avenue, Jeannette, Pennsylvania 15644. Armslist owns and operates the website Armslist.com, an online marketplace for the

4

sale and purchase of firearms, by, among others, individuals like Radcliffe Haughton, who are specifically prohibited by law from possessing firearms. On information and belief, certain advertisers also pay Armslist to advertise to the gun buyers and sellers who use the website. Armslist.com has a specific section for Armslist's Wisconsin customers, which at present includes over 4,000 advertisements for the purchase and sale of firearms and firearms-related paraphernalia.

13.     On information and belief, Defendant Brian Mancini ("Mancini"), an individual residing at 300 Heinz St., Pittsburgh, Pennsylvania 15212, is a member of Armslist and was, at all relevant times, responsible for the design, architecture, and operations of Armslist.com.

14.     On information and belief, Defendant Jonathan Gibbon ("Gibbon"), an individual residing at 616 Magee Avenue, Jeannette, Pennsylvania 15644, is a member of Armslist and was, at all relevant times, responsible for the design, architecture, and operations of Armslist.com.

15.     On information and belief, Defendant Broc Elmore ("Elmore"), an individual residing at 4212 Middlefield Court, Norman, Oklahoma 73072, is a member of Armslist and was, at all relevant times, responsible for the design, architecture, and operations of Armslist.com.

16.     Defendant ABC Insurance Co. ("ABC Insurance") is the fictitious name of an unknown insurance company that issued a policy or policies of liability insurance to or for the benefit of the Defendants Armslist, Mancini, Gibbon, and Elmore (collectively, the "Armslist Defendants"), by the terms of which the insurer agreed to pay all sums for which any or all of the Armslist Defendants might become liable for claims such as those hereinafter set forth;

5

that by reason of such insurance, the negligence of any of the Armslist Defendants, as alleged herein, and the laws of the State of Wisconsin, ABC Insurance, is a proper defendant herein; that pursuant to Wis. Stat. sec. 807.12, ABC is being inserted in place of the real and proper insurance company defendant, which as soon as its identity is ascertained will be substituted in place of ABC; that on information and belief, Defendant ABC Insurance does substantial business in Milwaukee County.

17.     On information and belief, Defendant Devin Linn ("Linn") is an individual residing at 6378 Fairdale Drive, Cedarburg, Wisconsin 53012.

18.     Defendant DEF Insurance Co. ("DEF Insurance") is the fictitious name of an unknown insurance company that issued a policy or policies of homeowners, rental and/or liability insurance to or for the benefit of Linn, by the terms of which the insurer agreed to pay all sums for which Linn might become liable for claims such as those hereinafter set forth; that by reason of such insurance, the negligence of Linn, as alleged herein, and the laws of the State of Wisconsin, DEF Insurance, is a proper defendant herein; that pursuant to Wis. Stat. sec. 807.12, DEF is being inserted in place of the real and proper insurance company defendant, which as soon as its identity is ascertained will be substituted in place of ABC; that on information and belief, Defendant DEF Insurance does substantial business in Milwaukee County.

19.     Decedent Radcliffe Haughton was, at the time of the incident that is the subject of this lawsuit, an adult citizen and resident of the State of Wisconsin, County of Milwaukee, residing at 6604 W. Glenbrook Road, Brown Deer, Wisconsin 53223. Radcliffe Haughton died on October 21, 2012. Jennifer F. Valenti, 15850 W. Bluemound Road, Suite 303, P.O.

6

Box 1111, Brookfield, Wisconsin 53008, was appointed to serve as Special Administrator of the Estate of Radcliffe Haughton (the "Radcliffe Haughton Estate"). If Jennifer F. Valenti is no longer willing to serve as Special Administrator, the Plaintiffs will petition the appropriate Milwaukee County Circuit Court or Court Commissioner, or other appropriate court, to appoint a special administrator or personal representative of the Radcliffe Haughton Estate, and that pursuant to § 807.12, Wis. Stat., this complaint will be amended to insert the proper name for said special administrator or personal representative as soon as it is ascertained.

<div align="center">

## JURISDICTION AND VENUE

</div>

20.     Jurisdiction over Armslist is proper in Wisconsin pursuant to section 801.05 of the Wisconsin Code of Civil Procedure, Wis. Stat. § 801.05(1)(d), (3) and (4)(a) because Armslist is a limited liability company engaged in substantial and not isolated activities within this state, has committed a tortious act within Wisconsin, and has committed a tortious act outside this state causing injury to Zina Daniel Haughton and Yasmeen Daniel while carrying out solicitation or service activities within Wisconsin or having such activities carried out on its behalf.

21.     Jurisdiction over Linn is proper pursuant to Wis. Stat. § 801.05(1)(b), (1)(d) and (3) because Linn is domiciled in the state of Wisconsin, engaged in substantial and not isolated activities within this state and committed a tortious act within Wisconsin.

22.     Jurisdiction over Mancini, Gibbon, and Elmore is proper pursuant to Wis. Stat. § 801.05(1)(d), (3) and (4)(a) because each is engaged in substantial and not isolated activities within this state, each has committed a tortious act within Wisconsin, and each has committed a tortious act outside this state causing injury to Zina Daniel Haughton and Yasmeen Daniel

<div align="center">

7

</div>

while carrying out solicitation or service activities within Wisconsin or having such activities carried out on their behalf.

23. Venue is proper in Milwaukee County pursuant to Wis. Stat. § 801.50(2)(b), because it is a county where Defendants Armslist, ABC Insurance Co. and DEF Insurance Co. do substantial business and because Defendant the Radcliffe Haughton Estate is a resident of Milwaukee County. Defendant Armslist's website, Armslist.com, contains a specific section for firearms transactions in the City of Milwaukee, and, as of the date of this filing, advertises over 1,000 proposed firearms transactions in that section of its website, which represents more than a quarter of the total postings statewide. As one example of Armslist's substantial business in Milwaukee County, Milwaukee police have reported that Milwaukee arms dealer and serial felon, James Tanksley, has routinely used Armslist to buy, sell and trade firearms in this county. (*See* Milwaukee Journal-Sentinel, "Milwaukee police use technology, Internet to nab theft suspect," Oct. 7, 2013).

## GENERAL ALLEGATIONS

### Radcliffe Haughton Was Prohibited From Possessing a Firearm

24. Zina Daniel Haughton's marriage to Radcliffe Haughton was marked by violent and erratic behavior by Radcliffe Haughton, requiring the Brown Deer Police Department to regularly visit the Haughton family home in response to reports of domestic strife and violence by Radcliffe Haughton.

25. On October 3, 2012, Radcliffe Haughton assaulted Zina Daniel Haughton in the couple's home. Zina Daniel Haughton called 911, and police arrived and escorted her to a local Holiday Inn to protect her from further violence.

8

26.     The following day, Brown Deer police escorted Zina Daniel Haughton back to her home to retrieve her personal items, after which she drove to work at Azana.

27.     That same day, Radcliffe Haughton appeared in Azana's parking lot with a knife and confronted Zina Daniel Haughton, who took shelter in the salon. Left in the parking lot, Radcliffe Haughton slashed the tires of his wife's car. Later that day, Brown Deer police arrested Radcliffe Haughton for domestic violence, criminal damage to property, and disorderly conduct related to these actions.

28.     For over a decade prior to October 2012, Zina Daniel Haughton had been afraid to seek an order from the courts protecting her from Radcliffe Haughton's violence, but after experiencing the above acts in early October 2012, she found the courage to seek protection against the man who had terrorized her for years.

29.     On October 4, 2012, Zina Daniel Haughton signed a 72-hour contact prohibition against Radcliffe Haughton, requiring Radcliffe Haughton to avoid contacting her other than through a law enforcement officer or attorney.

30.     On October 8, 2012, Zina Daniel Haughton filed a petition for a restraining order in Milwaukee County Court. The court issued a temporary restraining order for the pendency of the matter.

31.     Ten days later, on October 18, 2012, Radcliffe Haughton and Zina Daniel Haughton attended a hearing to adjudicate her petition for a restraining order. Zina Daniel Haughton testified on her own behalf and was subjected to a half hour of cross examination from Radcliffe Haughton. She told the court that Radcliffe Haughton's threats "terrorize my every waking moment."

9

32.     On information and belief, two Brown Deer police officers also testified on Zina Daniel Haughton's behalf.

33.     The Milwaukee County Court granted Zina Daniel Haughton's petition and prohibited Radcliffe Haughton from approaching his wife for four years, the maximum time permitted under Wisconsin law.

34.     The Milwaukee County Court also took the step of prohibiting Radcliffe Haughton from possessing a firearm until October 18, 2016, finding "clear and convincing evidence" that he might use a firearm to harm Zina Daniel Haughton and endanger public safety.

35.     After the October 18, 2012 hearing, Zina Daniel Haughton may have believed that she was finally safe. Under the court order and Wisconsin law, it would now be a crime for Radcliffe Haughton to contact her or attempt to purchase a firearm. Any attempt by Radcliffe Haughton to purchase a firearm would also be a violation of federal and state law, which prohibits any person against whom a domestic violence restraining order has been issued from possessing a firearm. 18 U.S.C. § 922(g), Wis. Stat. § 941.29. If Radcliffe Haughton attempted to purchase a firearm from a responsible, licensed dealer, the sale would be blocked by a federally required background check, and law enforcement would be aware that Radcliffe Haughton, a prohibited purchaser, had attempted to illegally acquire a firearm.

36.     But just two days later, with Armslist's assistance, Radcliffe Haughton obtained the gun he used to murder Zina Daniel Haughton and two of her co-workers.

10

**Armslist's Business Model is to Put Guns in the Hands of Prohibited Purchasers**

37.     It was foreseeable that a prohibited, unstable purchaser like Radcliffe Haughton would use Armslist to purchase a firearm.

38.     Federally licensed firearms dealers are required to conduct background checks on gun buyers to prevent sales to individuals prohibited from possessing firearms, that is, felons, those adjudicated mentally ill, and those, like Radcliffe Haughton, who are specifically prohibited under domestic violence restraining orders.

39.     In enacting this requirement, Congress recognized and sought to address the inherent danger to the public posed by certain individuals possessing firearms.

40.     Unlicensed "private sellers" who are not engaged in the business of selling firearms, on the other hand, are not required under federal law to conduct background checks.

41.     When Congress required only those engaged in the business of selling firearms to conduct background checks, it did not intend to open the door to a massive, permanent, 24/7 online "Firearms Marketplace" where prohibited persons can illegally purchase firearms by evading background checks; that is, a virtual gun store engaged in the business of selling firearms without abiding by any of the requirements legally imposed on licensed dealers.

42.     Yet, Armslist.com was created in 2007 to be exactly that. As Gibbon told a journalist shortly after he and Mancini founded Armslist: "Armslist.com is an online firearms marketplace... Imagine a gun show that never ends." On information and belief, Gibbon's reference to "gun shows" was intended to communicate that sales undertaken through Armslist.com would not require background checks. Gibbon also stated in that interview that Armslist.com seeks to be the "#1 place to go to buy or sell a firearm."

11

43. At all relevant times, the Armslist Defendants knew, or should have known, that brokering online, anonymous gun sales between private parties creates a foreseeable danger to the public because of the likelihood that prohibited purchasers would use their services to acquire a firearm.

44. Private sales conducted over the internet frequently have been linked to illegal gun trafficking, sales to minors, and mass shootings, such as those that took place at Virginia Tech, a Navy recruiting center in Chattanooga, Tennessee, and Northern Illinois University.

45. In 1999, as a result of the foreseeable danger that websites that enable and facilitate private gun sales to prohibited purchasers would lead to injury and death, online auction site eBay announced it was prohibiting private sales of firearms on its site. eBay explains on its website that brokering online firearms sales is inconsistent with its obligation to follow federal laws and regulations.

46. In or around 2007, Craigslist followed suit, banning firearm sales from its site.

47. Other online websites that allow private parties to post goods for sale, including Amazon.com and Google AdWords, also prohibit the listing of firearms for sale because of the high likelihood that such gun sales will funnel guns to the criminal market, including prohibited purchasers.

48. On information and belief, the Armslist Defendants created Armslist.com specifically to fill the vacuum created by these responsible websites that recognized the inherent risk created by online gun sales.

49. On information and belief, the Armslist Defendants designed Armslist.com specifically to exploit and profit from the background check exception for private sellers, to

12

enable the sale of firearms to prohibited and otherwise dangerous people, and to enable illegal firearm sales, including sales that avoid federal restrictions on interstate transfers, state-imposed waiting periods, and state-specific assault weapon restrictions.

a.  In 2012, Wisconsin law required federally licensed firearms dealers to wait 48 hours after receiving a "proceed" response from the background check system before transferring the firearm.

b.  In enacting this requirement, the Wisconsin legislature recognized that a "cooling off" period was in the interest of public safety.

c.  Armslist enabled unstable purchasers to avoid this 48-hour cooling off period, as Armslist.com did not require sellers and purchasers in Wisconsin to wait 48 hours before being able to exchange contact information.

d.  In addition, a number of states prohibit private sellers from transferring firearms without a background check. Armslist.com's design enables private sellers in states that require background checks to sell firearms without conducting a background check.

50.  The Armslist Defendants knew, or should have known, that the design and architecture of Armslist.com creates a near-certainty that prohibited purchasers will use the marketplace to buy firearms, and that the marketplace will be used for illegal gun sales, including by unlicensed individuals that are engaged in the business of selling firearms.

13

51.     In the marketplace the Armslist Defendants created, any putative buyer can post a description of the firearm they wish to purchase and any seller can post a description of the firearm they wish to sell.

52.     Armslist's customers contact one another through Armslist's server by clicking on a link in their website or using their counterparty's contact information (if it is listed on Armslist.com).

53.     The Armslist Defendants receive revenue through advertising on Armslist.com. The more gun transactions that take place through Armslist.com, the more money the Armslist Defendants make.

54.     Several of the most significant design features of Armslist.com – each of which, on information and belief, existed at all relevant times – assist prohibited purchasers in evading federal and state laws while acquiring firearms, including without limitation:

> a.     Armslist provides the data fields which its customers fill out when they create "want to buy" and "for sale" postings. For sellers, one of the most prominent data fields identifies whether a seller is a "premium vendor" (that is, a purportedly licensed gun dealer) or a "private seller." Similarly, for a purchaser posting a "want to buy" advertisement, Armslist offers a "seller" data field for them to specifically identify whether they would prefer to purchase from a private party than from a licensed gun dealer.
>
> b.     On information and belief, Mancini, through his company Listmill, LLC, provides Armslist.com's search function, which is designed to facilitate

14

prohibited purchases (Listmill's website states that "Search is the cornerstone of a good marketplace"). One of the most prominent features of Armslist's search function is the ability to search for only private sellers, thereby eliminating from search results any sellers required to perform a background check.

c. Armslist.com offers specific buttons allowing users to "flag" advertisements for review and policing by Armslist. It allows users to flag Armslist customers as a "Scam," "Scam/Inappropriate," "Over-Priced," "Miscategorized," "Vendor Listing," and "Unresponsive." On information and belief, Armslist uses these "flags" to delete certain offers and prohibit certain users from participating on Armslist.com. However, Armlist expressly prevents users from flagging content as criminal or illegal and does not take similar actions with respect to illegal activities on its website.

d. Armslist.com does not require users to register an account, thereby encouraging anonymity and allowing private sellers to post an unlimited amount of advertisements and engage in the business of dealing in firearms without a license. Armslist also prominently displays on each advertisement whether the account is registered or unregistered, thereby allowing potential customers to seek out transactions with an extra layer of anonymity.

e.      Armslist.com does not contain any restrictions on who may create an account or buy or sell firearms using the site.

f.      Armslist does not contain any restrictions for prospective buyers, and its website is designed to enable buyers to evade state waiting period and other legal requirements.

g.      Armslist.com mentions in boilerplate, conclusory language that its users must obey the law, but these mentions are a ruse and a fraud, as Armslist fails to provide its amateur users any guidance as to the laws governing firearm sales or the care required in conducting such sales.

55.      The Armslist Defendants knew, or should have known, that the design and features of Armslist.com would lead to a dangerous, prohibited purchaser illegally acquiring a weapon on its site.

56.      On information and belief, the Armslist Defendants recognize this risk but, instead of taking any steps to mitigate it, they merely ask visitors to certify that they will not use the website for "any illegal purpose." This language is a ruse and a fraud intended to create the illusion of legal compliance. A reasonable person would not, and the Armslist Defendants do not, believe that individuals undeterred by federal firearms laws would be deterred by their website's terms of service.

57.      Purchasers who would prefer a private seller to a licensed dealer – and would therefore use the data fields and search functions described above – are more likely to be prohibited purchasers. Legitimate, legal purchasers of firearms shop based on quality, seller reliability and competitive price.

16

58.     Similarly, because most sellers on its site are, or purport to be, private sellers who often have limited knowledge or experience related to firearms transactions, the Armslist Defendants knew, or should have known, that such inexperienced sellers are more likely to violate the law and their duty to the public by selling firearms to prohibited and/or dangerous purchasers, whether deliberately or inadvertently.

59.     The inherent risk in the sale of firearms requires that sellers take measures to determine whether purchasers can legally possess the firearms being sold. The Bureau of Alcohol, Tobacco, Firearms and Explosives, and the gun industry itself, through its "Don't Lie for the Other Guy" program, has recognized that it is important that purchasers, particularly those who are unknown to the seller, be vetted using specific questions in addition to background checks to ensure that prohibited persons do not come into possession of firearms.

60.     The Armslist Defendants offer a marketplace catering to Armslist's private seller customers, but provide no guidance with respect to the measures that must be taken to ensure that prohibited persons are not sold firearms.

61.     Armslist does not make any efforts to vet the users of Armslist.com to prevent illegal, dangerous sales, even though such measures would be commercially reasonable and drastically reduce the likelihood of unlawful sales.

62.     Due to significant innovations in online sales technology, Armslist could, had it wanted to do so, reasonably and at a relatively low cost designed and effectuated its business model differently; rather than creating a magnet for prohibited purchasers, it could have designed its model with safeguards, some of which are used by other websites. These

17

safeguards would have enabled Armslist to continue to broker sales of firearms to legal persons while minimizing the risk that firearms would get in the hands of dangerous and/or prohibited persons.

63. The reasonable, feasible and low-cost measures that Armslist could have taken include but are not limited to:

a. requiring potential buyers or sellers to register in order to use the site. Such registration would require, at minimum, the buyer or seller to submit his or her real name, address, email, and phone number to Armslist.com.

b. authenticating all registrations, to ensure that each potential user has provided real and accurate information and, if potential registrants fail to provide accurate information, refusing access.

c. implementing a wait period between registration and site access.

d. giving sellers and/or buyers the ability to flag potentially unlawful sales.

e. preventing sellers and purchasers from acquiring one another's contact information until their eligibility to sell and purchase firearms was confirmed.

f. for states such as Wisconsin, where the public has free and instantaneous access to individuals' criminal history through the online Wisconsin Circuit Court Access system, Armslist could have required potential users to upload a search of their criminal history before the user's account could be approved.

18

64. A reasonable person would have included these or other measures which would reduce the risk that firearms will be sold to prohibited persons.

65. In fact, many websites or web-based applications require registration or authentication, including Gunbroker.com, an auction site for firearms, which requires users to register before buying a gun and take delivery of a firearm only through a federally licensed firearms dealer.

66. Had Armslist used reasonable care, Radcliffe Haughton would not have obtained the firearm he used to kill.

67. Exactly contrary to its duty to use reasonable care, Armslist designed its website and business to facilitate sales to illegal purchasers.

**Armslist Does, In Fact, Put Guns in the Hands of Prohibited Persons**

68. Moreover, it is clear that Armslist.com does what the Armslist Defendants designed it to do: put guns in the hands of prohibited persons.

69. At all relevant times, the Armslist Defendants knew, or should have known, of the activities taking place on Armslist.com. These activities put the Armslist Defendants on notice of the fact that prohibited persons, for whom violent acts against the general public are foreseeable, used its site to purchase firearms.

70. For example, in 2011, New York City conducted an undercover investigation of private online firearm sales to determine whether private sellers who advertised guns for sale on the internet refused to sell guns to individuals who could not pass a background check in accordance with federal law. That December, New York City publicly released a report of its findings, entitled "Point, Click, Fire: An Investigation of Illegal Online Gun Sales", which

19

indicated, *inter alia*, that (1) 62% of private sellers agreed to sell a gun to a buyer who stated that he probably could not pass a background check; (2) 54% of Armslist sellers were willing to make a sale to a person they believed could not pass a background check; and (3) 67% of private online sellers in Wisconsin were willing to make a sale to a person they believed could not pass a background check. The results of the New York City investigation were widely reported in the press with articles concerning the report appearing on, among other sites, Time and ABC News online.

71.     In addition, a study conducted by the bipartisan Mayors Against Illegal Guns ("MAIG"), the results of which MAIG publicly released in a September 2013 report entitled "Felon Seeks Firearm, No Strings Attached", determined that one in thirty individuals who actually post their contact information on an Armslist.com "want to buy" posting have a criminal record that disqualifies them from possessing a gun. Far more buyers, particularly those who are prohibited, however, do not post their information, and instead contact sellers who have posted "for sale" information.

72.     MAIG also determined that 90% of the sellers on Armslist.com are private sellers. On information and belief, this group is composed primarily of: (1) individuals with limited experience selling firearms because they are not engaged in the business of gun sales; and (2) individuals who are engaged in the business and should be licensed under federal law, but are not licensed because, *inter alia*, they desire to sell guns without conducting background checks.

73.     A 2013 study by Third Way and Americans for Responsible Solutions demonstrated that the primary reason an Armslist customer would seek out private gun sellers,

20

by intentionally screening out ads from licensed dealers, is specifically to evade a background check. The study revealed that the average number of want ads specifically asking to buy from a private seller on Armslist is 240% higher in states that do not require background checks on those sales as compared to states that require checks on private, stranger-to-stranger sales. The same study revealed that Wisconsin had the fifth highest number of Armslist want ads seeking to buy from private sellers.

74. Specific incidents, of which the Armslist Defendants are on notice, also demonstrate that prohibited persons use Armslist.com to purchase illegal guns.

75. In January 2011, Demetry Smirnov, an individual prohibited from purchasing a gun, used Armslist.com's "power search" function to find a private seller, who sold him the firearm used to murder the Chicago woman he had been stalking.

76. The seller who sold the murder weapon to Smirnov had sold over twenty firearms on Armslist, and appeared to be illegally engaged in the business of selling firearms without a license.

77. Armslist knows that its design enables individuals to illegally engage in the business of selling firearms without a license without any oversight or detection.

78. In Milwaukee County, Milwaukee police have reported that local arms dealer and serial felon, James Tanksley, has routinely used Armslist.com to buy, sell and trade firearms.

79. MAIG's investigation of Armslist.com's listings from 2013 identified the following clear cases of prohibited purchasers seeking firearms on Armslist.com. On information and belief, similar offers to purchase existed on Armslist.com at all relevant times:

21

a.    A 25-year-old male in Columbus, Ohio posted an ad on March 24, 2013 attempting to buy a gun in cash or with ammunition. Between 2007 and 2013, he was named as a defendant in 15 felony or misdemeanor cases, including a felony conviction for possession of crack cocaine that barred him from possessing guns.

b.    A 27-year-old male in Fort Collins, Colorado posted an ad on March 30, 2013 seeking an M&P22 handgun. In 2005, the would-be buyer had attacked his ex-girlfriend and was found guilty of domestic violence harassment; he later violated an order of protection. These barred him from possessing guns.

c.    A 35-year-old male in North Carolina posted an ad for an M1A SOCOM 16 rifle on March 27, 2013. The would-be buyer had been arrested as a fugitive in Iowa in 2003 and extradited to North Carolina; he was also found guilty of a series of felony charges, including robbery with a dangerous weapon, in 1996. These offenses rendered him a prohibited purchaser.

d.    A 27-year-old male in Louisville, Kentucky posted an ad on March 28, 2013 in search of an XDM 3.8" handgun, promising "will pay cash." In 2006, he had been found guilty in Ohio of misdemeanor assault against the mother of his child, which prohibited him from possessing firearms.

80.    A 2013 New York Times investigation of Armslist, the results of which the New York Times published in an April 17, 2013 article, also identified postings by prohibited

22

purchasers, including Omar Roman-Martinez (a convicted felon) and Gerard Toolin (a fugitive wanted for two felonies and one misdemeanor).

81. On information and belief, the share of criminals who purchase guns on Armslist.com is at least four times higher than the share who attempt to purchase at licensed dealers.

82. On information and belief, at all relevant times, the Armslist Defendants knew, or should have known, that privately sold firearms on their site often cost more money than the same firearms purchased from a licensed dealer, reflecting the premium that dangerous, prohibited purchasers are willing to pay for firearms that they could not obtain through legitimate means.

**Radcliffe Haughton Uses Armslist's Services to Purchase a Semiautomatic Handgun**

83. On information and belief, Radcliffe Haughton began his search for a firearm to kill Zina Daniel Haughton and her co-workers after Zina Daniel Haughton sought the protection of the Wisconsin courts.

84. On information and belief, Radcliffe Haughton recognized that elements of Armslist.com's design would assist him in purchasing a firearm and, on that basis, searched for a gun to kill Zina Daniel Haughton on Armslist.com.

85. On information and belief, a quick and free search of Radcliffe Haughton's criminal history through the Wisconsin Circuit Court Access system would have revealed that Radcliffe Haughton was a prohibited purchaser.

86. On information and belief, Armslist did not conduct a search of Radcliffe Haughton's criminal history through the Wisconsin Circuit Court Access system and Armslist

23

did not require Radcliffe Haughton to upload his criminal history check before doing business on Armslist.

87.     On information and belief, Radcliffe Haughton's search for firearms took place exclusively on Armslist.com and made use of Armslist.com's search function to exclude licensed dealers using Armslist.com's search functions.

88.     On information and belief, Radcliffe Haughton chose Armslist.com, because he knew that he could not acquire a firearm from a licensed dealer or from a private seller in his community who knew him, and that any contact with a legitimate seller could result in his plan of illegally purchasing a firearm being revealed to law enforcement authorities.

89.     On information and belief, on October 19, 2012, Radcliffe Haughton found an Armslist.com offer of sale posted by Linn for the Murder Weapon (an FNP-40 semiautomatic handgun) with three high-capacity magazines of ammunition for $500.

90.     On information and belief, $500 is greater than the cost would be to a legitimate buyer purchasing a used FNP-40 semiautomatic handgun and three magazines of ammunition.

91.     On information and belief, using Armslist.com's "contact" function, Radcliffe Haughton emailed Linn on October 19, 2012 to arrange a purchase of the Murder Weapon.

92.     On information and belief, the two later spoke for 5 minutes and arranged a meeting in a McDonald's parking lot in Germantown, Wisconsin.

93.     On information and belief, Radcliffe Haughton communicated to Linn on the October 19, 2012 phone call that he needed the firearm as soon as possible.

94.     On information and belief, on the morning of October 20, 2012, Linn met Radcliffe Haughton and handed him the Murder Weapon with three high-capacity magazines

24

of ammunition while sitting in the front seat of Linn's black Mazda in the McDonald's parking lot.

95.    On information and belief, Radcliffe Haughton informed Linn on the phone call and in person that he would prefer a firearm with a high-capacity magazine.

96.    On information and belief, Linn did not ask for what purposes Radcliffe Haughton sought the Murder Weapon, whether he was a felon, whether he was subject to any domestic violence restraining orders or whether he had been adjudicated mentally ill.

97.    On information and belief, Linn did not contact any law enforcement agency or attorney to seek guidance regarding the law pertaining to the sale or his duty of care to the public at large.

98.    On information and belief, Linn did not look up Radcliffe Haughton on Wisconsin's publicly available court access database to determine if he was prohibited from buying or possessing firearms.

99.    On information and belief, before coming into possession of the Murder Weapon, Radcliffe Haughton did not possess a firearm.

100.    Linn knew, or should have known, that handing Radcliffe Haughton a semiautomatic firearm created a foreseeable risk that Radcliffe Haughton would use it to harm others.

101.    On information and belief, Radcliffe Haughton had acted erratically and suspiciously and/or confessed his intent to murder his wife to numerous individuals, including strangers, in the time before and after he met Linn:

25

a.  On October 8, 2012, Radcliffe Haughton posted on Facebook, "Need to get out of Wisconsin, help."

b.  On October 9, 2012, he wrote, "Can anyone help get me out of Wisconsin?"

c.  On October 16, 2012, Radcliffe Haughton told his father that, "If I had a gun, I would shoot her," referring to Zina Haughton.

d.  On October 17, 2012, Radcliffe Haughton advised his acquaintance, Jeffrey Simmons, that "she's not the only one I'm going to get."

e.  On October 19, 2012, Radcliffe Haughton showed Mr. Simmons a mug shot of himself and stated that it would be the photo used after he murdered his wife and others.

f.  On the evening of October 20, 2012, Radcliffe Haughton reached out to a stranger, Andy Fallon, in response to an offer of sale posted by Mr. Fallon on Armslist.com for an AK-47 assault rifle. On that call, Radcliffe Haughton indicated that he needed the assault rifle immediately. When Mr. Fallon offered to sell the assault rifle to him the following day, Radcliffe Haughton acted strangely and claimed that the transaction would have to take place that evening because he would be in church at all times the following day, raising Mr. Fallon's suspicions regarding the fitness of Radcliffe Haughton to possess a firearm.

g.  On October 21, 2012, Radcliffe Haughton informed a taxi driver whom he had just met that he had purchased a gun off Armslist.com and that

26

he was concerned that Zina Daniel Haughton had been unfaithful to him. Radcliffe Haughton was visibly nervous at this time, to the extent that he accidentally ripped the $20 bill he used to pay the taxi driver.

102. On information and belief, Radcliffe Haughton acted similarly erratically during his telephone call with Linn and in their subsequent meeting in the front seat of Linn's car.

103. Several other details regarding the transaction would have put a reasonable seller of firearms on notice that entrusting Radcliffe Haughton with a firearm created significant risk, including Radcliffe Haughton's requirement that a transaction take place as soon as possible, his insistence on a firearm with a high-capacity magazine, and his willingness to pay a premium above the gun's value.

104. Based on Radcliffe Haughton's conduct and his demands, a reasonable seller of firearms would have recognized that entrusting Radcliffe Haughton with a firearm presented a significant risk of harm to the general public.

105. The Armslist Defendants were on notice that Radcliffe Haughton presented a dangerous risk because, on October 20, 2012, Radcliffe Haughton submitted a "want to buy" post to Armslist.com that should have raised red flags due to its extreme urgency, lack of discernment, and preference for a high-capacity magazine.

106. Radcliffe Haughton's posting stated: "Looking for a handgun that is 300obo. I'll post a few handguns that I'm interested in, I've had these pics for a long time that I got off google. Looking to buy asap. Not looking for compact handguns, maybe sub-compact, prefer full size. Any caliber is ok, hoping it has a high mag capacity no less than 9, tell me what's all

27

included with the handgun, ammo, accessories etc. I'm a serious buyer so please email me asap. Have cash now and looking to buy now. I am mobile."

107. Radcliffe Haughton's "want to buy" posting specified that the purchaser was seeking a private seller.

108. Radcliffe Haughton's "want to buy" posting specified he was looking to buy as soon as possible, using the word "asap" twice and stating that Radcliffe Haughton was "looking to buy now."

109. The Armslist Defendants took no action to notify law enforcement or the sellers using its services of this posting or any concern related thereto.

110. The acts of the Armslist Defendants and Linn in aiding and abetting Radcliffe Haughton's unlawful possession of the Murder Weapon constituted a federal crime under 18 U.S.C. § 2 and 18 U.S.C. § 922(g).

## The Shooting

111. One day after Radcliffe Haughton, aided and abetted by the Armslist Defendants, purchased the Murder Weapon, he took a taxi cab to Azana, where Zina Daniel Haughton worked as a hair stylist.

112. Shortly after 11 AM Radcliffe Haughton entered Azana carrying the Murder Weapon that he purchased via Armslist.com

113. Zina Daniel Haughton approached Radcliffe Haughton immediately and tried to convince him not to hurt anyone.

114. But Radcliffe Haughton ordered everyone to get on the ground and began shooting employees at the pedicure station.

28

115.    Radcliffe Haughton shot and injured Zina Daniel Haughton.

116.    Radcliffe Haughton shot and injured Sarah Maldonado, a pregnant woman.

117.    Radcliffe Haughton fatally shot Cary Robuck.

118.    Yasmeen Daniel was present at Azana during the shooting. Radcliffe Haughton pointed his weapon at Yasmeen Daniel, on information and belief intending to shoot her, but Yasmeen was saved when Maelyn Lind positioned herself in front of her.

119.    Radcliffe Haughton then fatally shot Maelyn Lind.

120.    Yasmeen Daniel witnessed Maelyn Lind's murder and the events surrounding her mother's murder, including the immediate aftermath.

121.    Yasmeen Daniel also consciously feared for her life because Radcliffe Haughton pointed his gun directly at her, and was able to escape only when Radcliffe Haughton moved on to find other victims.

122.    Radcliffe Haughton then attempted to shoot the former owner of Azana, Viki Murray, but the gun malfunctioned and she was able to escape.

123.    After reloading the weapon, Radcliffe Haughton shot and injured Courtney Buss and an unnamed Azana client.

124.    Minutes after, Radcliffe Haughton again shot (and this time fatally wounded) Zina Daniel Haughton.

125.    After he fired the last round of shots, Radcliffe Haughton ran out of Azana, where he was confronted by Officer Behnke. After Officer Behnke confronted Radcliffe Haughton, Radcliffe Haughton ran back into Azana.

29

126. Radcliffe Haughton attempted to take Courtney Buss hostage before he ran to the second floor. Law enforcement officials observed Radcliffe Haughton pull in the blinds on the second floor.

127. Law enforcement personnel entered Azana and after a search, found Radcliffe Haughton dead from a self-inflicted gunshot wound to the head.

## COUNT I – NEGLIGENCE
## (AGAINST THE ARMSLIST DEFENDANTS AND LINN)

128. Plaintiffs incorporate and reallege the above paragraphs to the extent not inconsistent here.

129. At all relevant times, the Armslist Defendants and Linn were subject to the general duty imposed on all persons not to expose others to reasonably foreseeable risks of injury. The Armslist Defendants and Linn had a duty to exercise reasonable care in selling guns, creating a marketplace for the sale of guns, and facilitating the sale of guns and to refrain from engaging in any activity creating reasonably foreseeable risks of injury to others. Breach of this duty constitutes negligence.

130. At all relevant times the Armslist Defendants owed a duty to the public, including Zina Daniel Haughton and Yasmeen Daniel, to operate their website, Armslist.com, in a commercially reasonable manner. As the operators of a website that creates a permanent, 24/7 marketplace for the private sale of lethal weapons among strangers, the Armslist Defendants had a duty to employ sufficient questioning and screening of customers, as well as to design a website that complied with existing gun laws. Breach of this duty constitutes negligence.

30

131. At all relevant times, Linn owed a duty to the public, including Zina Daniel Haughton and Yasmeen Daniel, to exercise reasonable care in selling guns and to refrain from selling firearms to individuals who are clearly dangerous or prohibited under state and federal law from possessing a firearm.

132. The Armslist Defendants intended the design of Armslist.com to facilitate and/or knew or had reasonable cause to believe that the design of Armslist.com would facilitate sales of guns to prohibited purchasers, such as Radcliffe Haughton.

133. Linn knew or had reasonable cause to believe that Radcliffe Haughton was a prohibited purchaser and/or was likely to use the Murder Weapon in a way that would create an unreasonable risk of harm to others, including Zina Daniel Haughton and Yasmeen Daniel.

134. The Armslist Defendants breached their duty by:

    a.   Designing Armslist.com to facilitate sales to prohibited purchasers, such as Radcliffe Haughton.

    b.   Failing to provide any training or guidance to the amateur, inexperienced sellers who are its customers and would foreseeably use Armslist.com to sell firearms.

    c.   Failing to employ reasonable questioning and screening of Armslist.com users and allowing prohibited purchasers, such as Radcliffe Haughton, to use Armslist.com.

135. Linn breached his duty by selling a firearm to Radcliffe Haughton when he knew, or reasonably should have known, that Radcliffe Haughton was prohibited by law from

31

possessing a firearm and/or was likely to use the Murder Weapon in a way that would create an unreasonable risk of harm to others, including Zina Daniel Haughton and Yasmeen Daniel.

136. Because of the Armslist Defendants' and Linn's breaches, Radcliffe Haughton, a prohibited purchaser, was able to purchase the Murder Weapon he used to murder Zina Daniel Haughton, Cary Robuck, and Maelyn Lind, as well as injure four others.

137. The Armslist Defendants and Linn foreseeably knew or should have known that innocent persons such as Zina Daniel Haughton and Yasmeen Daniel would be injured as a result of their conduct.

138. As a result of the Armslist Defendants' and Linn's negligence, as alleged herein, the plaintiff, Yasmeen Daniel, has suffered personal injuries and damages including significant past and future pain, suffering, disability, emotional distress, and loss of enjoyment of life; past and future medical expenses; past wage loss and impairment of future earning capacity; severe emotional distress in witnessing the injuries and death of Zina Daniel Haughton; and other compensable injuries and damages, all to her damage in an amount to be determined at a trial of this matter.

139. As a result of the Armslist Defendants' and Linn's negligence, as alleged herein, Zina Daniel Haughton, whose estate is represented herein by Special Administrator Yasmeen Daniel, suffered personal injuries that resulted in her death, and damages including significant pain, suffering, fear of impending death, awareness of impending death; and other compensable injuries and damages, all to the damage of her Estate in an amount to be determined at a trial of this matter.

32

## COUNT II – NEGLIGENCE PER SE
## (AGAINST THE ARMSLIST DEFENDANTS AND LINN)

140.    Plaintiffs incorporate and reallege the above paragraphs to the extent not inconsistent here.

141.    The Armslist Defendants and Linn violated federal, state, and local statutes, regulations, and ordinances, including without limitation by aiding and abetting the unlawful possession of a firearm pursuant to 18 U.S.C. § 2 and 18 U.S.C. § 922(g), and endangering safety by use of a dangerous weapon pursuant to Wis. Stat. § 941.20(1).

142.    The Armslist Defendants and Linn's legal violations caused the death of Zina Daniel Haughton and the injuries alleged herein. These laws are intended to protect public safety by preventing unlicensed and dangerous dealing of guns and acquisition and misuse of guns by criminals, children, and other irresponsible individuals. The statutory purpose of these laws is to avoid or diminish the likelihood of harm to Zina Daniel Haughton and Yasmeen Daniel that resulted from the violations and to protect Zina Daniel Haughton and Yasmeen Haughton from the particular type of harm they suffered here. These violations caused harm of the kind the laws are intended to avoid, and Zina Daniel Haughton and Yasmeen Haughton were within the class of persons the laws were intended to protect.

143.    As a result of the Armslist Defendants' and Linn's negligence, as alleged herein, the plaintiff, Yasmeen Daniel, has suffered personal injuries and damages including significant past and future pain, suffering, disability, emotional distress, and loss of enjoyment of life; past and future medical expenses; past wage loss and impairment of future earning capacity; severe emotional distress in witnessing the injuries and death of Zina Daniel Haughton; and other

33

compensable injuries and damages, all to her damage in an amount to be determined at a trial of this matter.

144. As a result of the Armslist Defendants' and Linn's negligence, as alleged herein, Zina Daniel Haughton, whose estate is represented herein by Special Administrator Yasmeen Daniel, suffered personal injuries that resulted in her death, and damages including significant pain, suffering, fear of impending death, awareness of impending death; and other compensable injuries and damages, all to the damage of her Estate in an amount to be determined at a trial of this matter.

## COUNT III - NEGLIGENT ENTRUSTMENT
## (AGAINST LINN)

145. Plaintiffs incorporate and reallege the above paragraphs to the extent not inconsistent here.

146. Linn was initially in control of the Murder Weapon (an FNP-40 handgun, serial number 61CMP11777) and three high capacity magazines.

147. Linn permitted Radcliffe Haughton, an unlawful possessor and/or purchaser, to use the Murder Weapon.

148. Linn either knew or in the exercise of ordinary care should have known that Radcliffe Haughton intended or was likely to use the Murder Weapon in a way that would create an unreasonable risk of harm to others, including Zina Daniel Haughton and Yasmeen Daniel.

149. Linn's negligent entrustment of the Murder Weapon to Radcliffe Haughton caused permanent injuries and damages to Zina Daniel Haughton and Yasmeen Daniel.

34

150. As a result of Linn's negligent entrustment of the Murder Weapon to Radcliffe Haughton, as alleged herein, the plaintiff, Yasmeen Daniel, has suffered personal injuries and damages including significant past and future pain, suffering, disability, emotional distress, and loss of enjoyment of life; past and future medical expenses; past wage loss and impairment of future earning capacity; severe emotional distress in witnessing the injuries and death of Zina Daniel Haughton; and other compensable injuries and damages, all to her damage in an amount to be determined at a trial of this matter.

151. As a result of Linn's negligent entrustment of the Murder Weapon to Radcliffe Haughton, as alleged herein, Zina Daniel Haughton, whose estate is represented herein by Special Administrator Yasmeen Daniel, suffered personal injuries that resulted in her death, and damages including significant pain, suffering, fear of impending death, awareness of impending death; and other compensable injuries and damages, all to the damage of her Estate in an amount to be determined at a trial of this matter.

## COUNT IV – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (AGAINST THE ARMSLIST DEFENDANTS AND LINN)

152. Plaintiffs incorporate and reallege the above paragraphs to the extent not inconsistent here.

153. At all relevant times, the Armslist Defendants and Linn were subject to the general duty imposed on all persons not to expose others to reasonably foreseeable risks of injury. The Armslist Defendants and Linn had a duty to exercise reasonable care in selling guns, creating the marketplace for the sale of guns, and facilitating the sale of guns and to refrain from engaging in any activity creating reasonably foreseeable risks of injury to others, including Yasmeen Daniel. Breach of this duty constitutes negligence.

35

154. At all relevant times the Armslist Defendants owed a duty to the public, including Yasmeen Daniel, to operate their website, Armslist.com, in a commercially reasonable manner. As the operators of a website that creates a permanent, 24/7 marketplace for the private sale of lethal weapons, the Armslist Defendants had a duty to employ sufficient questioning and screening of customers, as well as to design a website that complied with existing gun laws. Breach of this duty constitutes negligence.

155. At all relevant times, Linn owed a duty to the public, including Yasmeen Daniel, to exercise reasonable care in selling guns and to refrain from selling firearms to individuals who are prohibited under state and federal law from possessing a firearm.

156. The Armslist Defendants and Linn knew, or should have known that breaching their duties would cause severe emotional distress.

157. The Armslist Defendants breached their duty by, *inter alia*:

    a.    Designing Armslist.com to facilitate sales to prohibited purchasers, such as Radcliffe Haughton.

    b.    Failing to provide any training or guidance to the amateur, inexperienced sellers who are its customers and would foreseeably use Armslist.com to sell firearms.

    c.    Failing to employ reasonable questioning and screening of Armslist.com users and allowing prohibited purchasers, such as Radcliffe Haughton, to use Armslist.com.

158. Linn breached his duty by selling a firearm to Radcliffe Haughton when he knew, or reasonably should have known, the Radcliffe Haughton was prohibited by law from

36

possessing a firearm and/or was likely to use the Murder Weapon in a way that would create an unreasonable risk of harm to others, including Yasmeen Daniel.

159.   Because of the Armslist Defendants' and Linn's breaches, Radcliffe Haughton, a prohibited purchaser, was able to obtain the Murder Weapon he used to murder Zina Daniel Haughton, Cary Robuck, and Maelyn Lind, as well as injure four others in front of Yasmeen Daniel.

160.   Radcliffe Haughton aimed the Murder Weapon (a loaded FNP-40 caliber handgun) that he obtained because of the Armslist Defendants' and Linn's negligence at Yasmeen Daniel, putting her at a risk of immediate death. Yasmeen Daniel only survived because Maelyn Lind dove in front of her, giving Yasmeen Daniel time to escape.

161.   In addition to narrowly escaping being shot, Yasmeen Daniel saw Radcliffe Haughton fatally shoot Maelyn Lind.

162.   On information and belief, Yasmeen Daniel also saw Radcliffe Haughton shoot her mother, Zina Daniel Haughton, and witnessed the immediate aftermath of her mother's murder.

163.   Zina Daniel Haughton was threatened and then shot by Radcliffe Haughton and, on information and belief, witnessed each incident whereby Radcliffe Haughton wounded and/or killed her co-workers.

164.   As a result of the Armslist Defendants' and Linn's negligent infliction of emotional distress, as alleged herein, the plaintiff, Yasmeen Daniel, has suffered personal injuries and damages including significant past and future pain, suffering, disability, emotional distress, and loss of enjoyment of life; past and future medical expenses; past wage loss and

37

impairment of future earning capacity; severe emotional distress in witnessing the injuries and death of Zina Daniel Haughton; and other compensable injuries and damages, all to her damage in an amount to be determined at a trial of this matter.

## COUNT V – CIVIL CONSPIRACY
## (AGAINST THE ARMSLIST DEFENDANTS)

165.    Plaintiffs incorporate and reallege the above paragraphs to the extent not inconsistent here.

166.    At some point before October 2012, the Armslist Defendants and others known or unknown, explicitly, implicitly, or tacitly conspired, collaborated or agreed to, and/or participated in a combination to accomplish an unlawful purpose or to accomplish a lawful purpose by an unlawful means. Said conspiracy involved the intentional participation of the actors mentioned above with a view to the furtherance of a common design to disregard the law, including their obligations under common law. These actors conspired to unlawfully and unreasonably sell firearms, create a marketplace for the sale of firearms to prohibited purchasers and other dangerous persons, and/or facilitate the sale of firearms without exercising ordinary care in order to make a profit, including by designing Armslist.com to facilitate sales to prohibited purchasers and other dangerous persons and designing Armslist.com to encourage users to circumvent existing gun laws.

167.    Defendants Mancini, Gibbon, Elmore, and others known or unknown, knowingly and intentionally advised, encouraged or assisted Armslist in carrying out acts to continue to unlawfully and unreasonably sell firearms, create a marketplace for the sale of firearms to prohibited purchasers and other dangerous persons, and/or facilitate the sale of firearms without exercising ordinary care. Defendants Mancini, Gibbon, and Elmore urged

38

and acquiesced in Armslist's continued negligent and intentional conduct and Armslist continues its negligent and intentional practices, as a result of said explicit, implicit, or tacit collaboration, agreement or participation.

168.   Such conduct was in knowing violation of, *inter alia*, state and federal conspiracy statutes, which are applicable to the possession, sale and marketing of firearms, and the violation was a cause of Plaintiffs' harm.

169.   As a result of the Armslist Defendants' conspiracy, as alleged herein, the plaintiff, Yasmeen Daniel, has suffered personal injuries and damages including significant past and future pain, suffering, disability, emotional distress, and loss of enjoyment of life; past and future medical expenses; past wage loss and impairment of future earning capacity; severe emotional distress in witnessing the injuries and death of Zina Daniel Haughton; and other compensable injuries and damages, all to her damage in an amount to be determined at a trial of this matter.

170.   As a result of the Armslist Defendants' conspiracy, as alleged herein, Zina Daniel Haughton, whose estate is represented herein by Special Administrator Yasmeen Daniel, suffered personal injuries that resulted in her death, and damages including significant pain, suffering, fear of impending death, awareness of impending death; and other compensable injuries and damages, all to the damage of her Estate in an amount to be determined at a trial of this matter.

Case 2:15-cv-01387-RTR   Filed 11/20/15   Page 39 of 50   Document 1-1

## COUNT VI – AIDING AND ABETTING TORTIOUS CONDUCT
## (AGAINST THE ARMSLIST DEFENDANTS)

171. Plaintiffs incorporate and reallege the above paragraphs to the extent not inconsistent here.

172. The Armslist Defendants aided, abetted, encouraged, urged, and acquiesced in Linn's negligent entrustment of the Murder Weapon to Radcliffe Haughton by, *inter alia*, acting in concert to broker the transaction between a dangerous, prohibited purchaser, Radcliffe Haughton, and Linn, shifting the responsibility of vetting purchasers to Linn, whom the Armslist Defendants knew or should have known would be unqualified to perform such vetting, and otherwise acting recklessly and negligently.

173. Defendants Mancini, Gibbon, and Elmore aided, abetted, encouraged, urged, and acquiesced in Armslist's negligent and reckless operation of Armslist.com. Such Defendants acted in concert with each other in the negligent and reckless operation of Armslist's business and website, including by the continual practice of maintaining an online 24/7 marketplace for the sale of firearms to prohibited purchasers and other dangerous persons, and by otherwise acting recklessly and negligently.

174. The Armslist Defendants aided, abetted, encouraged, urged, and acquiesced in Linn's sale of the Murder Weapon to Radcliffe Haughton in violation of 18 U.S.C. § 922(d) by, *inter alia*, acting in concert to broker the transaction between a dangerous, prohibited purchaser, Radcliffe Haughton, and Linn, shifting the responsibility of vetting purchasers to Linn, whom the Armslist Defendants knew or should have known would be unqualified to perform such vetting, and otherwise acting recklessly and negligently.

40

175. Such conduct was in knowing violation of state and federal aiding and abetting statutes, which are applicable to the sale, marketing, and facilitation of the sale of firearms, and the violation was a cause of Zina Daniel Haughton's and Yasmeen Daniel's harm.

176. Such conduct by the Armslist Defendants was known to be negligent and reckless.

177. As a result of the Armslist Defendants' aiding and abetting tortious conduct, as alleged herein, the plaintiff, Yasmeen Daniel, has suffered personal injuries and damages including significant past and future pain, suffering, disability, emotional distress, and loss of enjoyment of life; past and future medical expenses; past wage loss and impairment of future earning capacity; severe emotional distress in witnessing the injuries and death of Zina Daniel Haughton; and other compensable injuries and damages, all to her damage in an amount to be determined at a trial of this matter.

178. As a result of the Armslist Defendants' aiding and abetting tortious conduct, as alleged herein, Zina Daniel Haughton, whose estate is represented herein by Special Administrator Yasmeen Daniel, suffered personal injuries that resulted in her death, and damages including significant pain, suffering, fear of impending death, awareness of impending death; and other compensable injuries and damages, all to the damage of her Estate in an amount to be determined at a trial of this matter.

## COUNT VII – PUBLIC NUISANCE
### (AGAINST THE ARMSLIST DEFENDANTS)

179. By negligently, recklessly, and/or intentionally facilitating the sale of vast quantities of guns in a manner that ensures a steady flow of guns in large quantities to illegal traffickers, the illegal secondary market, criminals, juveniles, persons with criminal purposes

41

and others prohibited by law from having guns, including but not limited to felons, those adjudicated mentally ill, and those, like Radcliffe Haughton, who are specifically prohibited under domestic violence restraining orders, the Armslist Defendants have negligently, knowingly and/or intentionally participated in creating and maintaining an unreasonable interference with the rights held in common by the general public, constituting a public nuisance under Wisconsin common law and the law of the City of Brookfield. Without limitation, the acts and omissions of the Armslist Defendants as alleged herein cause, create, and maintain substantial and unreasonable interference with the public's health, safety, convenience, comfort, peace, and use of public property and/or private property.

180. By negligently, recklessly, and/or intentionally facilitating the sale of vast quantities of guns in a manner that ensures a steady flow of guns in large quantities to illegal traffickers, the illegal secondary market, criminals, juveniles, persons with criminal purposes and others prohibited by law from having guns, including but not limited to felons, those adjudicated mentally ill, and those, like Radcliffe Haughton, who are specifically prohibited under domestic violence restraining orders, the Armslist Defendants have engaged in an abnormally dangerous activity and caused an unreasonable interference with the rights held in common by the general public, constituting a public nuisance under Wisconsin common law and the law of the City of Brookfield. Without limitation, the acts and omissions of the Armslist Defendants as alleged herein cause, create, and maintain substantial and unreasonable interference with the public's health, safety, convenience, comfort, peace, and use of public property and/or private property.

42

181.    The acts and omissions of the Armslist Defendants as alleged herein substantially and unreasonably interfere with the public's use of public facilities, including the use of public highways and walkways. Public highways and walkways are substantially and unreasonably unsafe because of the presence of guns possessed by prohibited persons illegally sold and negligently supplied by the Armslist Defendants. The Armslist Defendant's acts and omissions as alleged herein substantially and unreasonably (a) increase the number of guns possessed by prohibited persons in and on public facilities, including on public highways and walkways, and (b) increase the degree to which unlawful possessors in and on public facilities, including on highways and walkways, are illegally armed with weapons.

182.    Numerous members of the public are killed, injured, or involved in criminal acts each year as a result of unlawful gun sales, negligently and/or intentionally facilitated and entrusted by the Armslist Defendants. The Armslist Defendants' acts and omissions as alleged herein cause a substantial and unreasonable increase in the number of members of the general public who are killed and injured by crime guns.

183.    The Armslist Defendants' acts and omissions as alleged herein cause substantial and unreasonable interferences with the public's health, safety, convenience, comfort, and peace in numerous other ways, including: (a) increasing the number of unlawful possessors of weapons who commit violent crimes against innocent members of the general public; (b) increasing the number and severity of property crimes committed by those unlawfully in possession of guns against innocent members of the general public; (c) increasing the number and severity of incidents in which those unlawfully in possession of guns disturb the peace by being disorderly; and (d) increasing the amount of society's resources that are diverted toward

43

dealing with the problems associated with the unlawful possession of guns sales negligently facilitated by the defendant gun dealers.

184.    The Armslist Defendants know or have reason to know that the acts and omissions alleged herein caused substantial and unreasonable interferences with the public's health, safety, convenience, comfort, peace, and use of public facilities, and, therefore, the Armslist Defendants had actual or constructive notice of the public nuisance. The Armslist Defendants' acts and omissions as alleged herein were undertaken with negligent and/or intentional disregard of the rights of the general public. The Armslist Defendants knew that they could have taken precautions that would have eliminated or minimized the injuries to the general public, but, despite their actual or constructive notice of the public nuisance, they chose not to take those precautions in order to maximize their revenues and profits.

185.    The Armslist Defendants' interference with the public's health, safety, convenience, comfort, peace, and use of public facilities is unreasonable, unlawful, substantial, significant, continuing, and long-lasting. This interference is not insubstantial or fleeting, and involves deaths and serious injuries suffered by many people and severe disruption of public peace, order, and safety.

186.    The Armslist Defendants' negligence, intentional, abnormally dangerous and unlawful conduct is a cause of public nuisance.

187.    The Armslist Defendants knowingly violated Wisconsin common law and the law of the City of Brookfield. Wisconsin common law and the City of Brookfield's nuisance ordinance are applicable to the dissemination of firearms that cause harm to the public. The Armslist Defendants' violation of Wisconsin common law and/or the City of Brookfield's

44

nuisance ordinance and failure to abate the public nuisance they created and maintained were a cause of Plaintiffs' harm, and the Armslist Defendants' continuation of such conduct and failure to abate such public nuisance continue to put the Plaintiffs as well as the public at risk.

188.    The Armslist Defendants' unlawful, negligent and/or intentional creation or maintenance of the public nuisance and failure to abate that nuisance, as alleged, directly caused significant harm, including injuries and damages to Zina Daniel Haughton, that resulted in her death, and to Yasmeen Daniel, individually and as Special Administrator of the Zina Daniel Haughton Estate, that is different from the harm suffered by other members of the public, including without limitation emotional distress, and trauma, all to the damage of Yasmeen Daniel and the Zina Daniel Haughton Estate in an amount to be determined at a trial of this matter.

<div align="center">

**COUNT VIII – WRONGFUL DEATH**
**(AGAINST THE ARMSLIST DEFENDANTS AND LINN)**

</div>

189.    Plaintiffs incorporate and reallege the above paragraphs to the extent not inconsistent here.

190.    The above described wrongful actions of the Armslist Defendants and Linn, including without limitation their acts and omissions constituting negligence, negligence per se, negligent entrustment, aiding and abetting tortious conduct, conspiracy and public nuisance, were a cause of death of Zina Daniel Haughton.

191.    As a result of the above described wrongful actions of the Armslist Defendants and Linn, including without limitation their acts and omissions constituting negligence, negligence per se, negligent entrustment, aiding and abetting tortious conduct, conspiracy and public nuisance, and the wrongful death of her mother, Zina Daniel Haughton, the plaintiff,

<div align="center">45</div>

Yasmeen Daniel, has suffered the loss of her mother's society and companionship; pecuniary loss; and all other compensable injuries and damages allowed under Wisconsin law, all to her damage in an amount to be determined at a trial of this matter.

192.    As a result of the above described wrongful actions of the Armslist Defendants and Linn, including without limitation their acts and omissions constituting negligence, negligence per se, negligent entrustment, aiding and abetting tortious conduct, conspiracy and public nuisance, Zina Daniel Haughton, whose estate is represented herein by Special Administrator Yasmeen Daniel, suffered personal injuries that resulted in her death, and damages including significant pain, suffering, fear of impending death, awareness of impending death; mental anguish; funeral expenses; and other compensable injuries and damages, all to the damage of her Estate in an amount to be determined at a trial of this matter.

## COUNT IX – PIERCING THE CORPORATE VEIL
## (AGAINST MANCINI, GIBBON, AND ELMORE)

193.    Plaintiffs incorporate and reallege the above paragraphs to the extent not inconsistent here.

194.    Armslist is the alter ego of Mancini, Gibbon, and Elmore, who effectively control its operations.

195.    On information and belief, Armslist is inadequately capitalized and its corporate formalities are not followed.

196.    Mancini, Gibbon, and Elmore have used Armslist as a vehicle for improper, negligent and unlawful conduct.

197.    This Court should make and hold Mancini, Gibbon, and Elmore liable for any and all obligations or liabilities of Armslist, as described in this Complaint.

46

## COUNT X – ASSAULT
## (AGAINST THE RADCLIFFE HAUGHTON ESTATE)

198.    Plaintiffs incorporate and reallege the above paragraphs to the extent not inconsistent here.

199.    Radcliffe Haughton intended to cause physical harm to Zina Daniel Haughton and Yasmeen Daniel.

200.    Radcliffe Haughton acted to cause Zina Daniel Haughton and Yasmeen Daniel to reasonably believe that he had the present intent and ability to harm them by aiming his gun at each of them, making threats, firing his gun in their direction, and other violent conduct directed toward them.

201.    As a result of this assault, as alleged, the plaintiff, Yasmeen Daniel, has suffered personal injuries and damages including significant past and future pain, suffering, disability, emotional distress, and loss of enjoyment of life; past and future medical expenses; past wage loss and impairment of future earning capacity; severe emotional distress in witnessing the injuries and death of Zina Daniel Haughton; and other compensable injuries and damages, all to her damage in an amount to be determined at a trial of this matter.

202.    As a result of this assault, as alleged, Zina Daniel Haughton, whose estate is represented herein by Special Administrator Yasmeen Daniel, suffered personal injuries that resulted in her death, and damages including significant pain, suffering, fear of impending death, awareness of impending death; and other compensable injuries and damages, all to the damage of her Estate in an amount to be determined at a trial of this matter.

203.    Defendant the Radcliffe Haughton Estate is liable for Radcliffe Haughton's wrongful acts.

47

## COUNT XI – BATTERY
## (AGAINST THE RADCLIFFE HAUGHTON ESTATE)

204. Plaintiffs incorporate and reallege the above paragraphs to the extent not inconsistent here.

205. Radcliffe Haughton intentionally caused bodily harm to Zina Daniel Haughton by shooting her in the torso and the head.

206. Zina Daniel Haughton did not consent to the harm.

207. As a result of this battery, as alleged, Zina Daniel Haughton, whose estate is represented herein by Special Administrator Yasmeen Daniel, suffered personal injuries that resulted in her death, and damages including significant pain, suffering, fear of impending death, awareness of impending death, and other compensable injuries and damages, all to the damage of her Estate in an amount to be determined at a trial of this matter.

208. Defendant the Radcliffe Haughton Estate is liable for Radcliffe Haughton's wrongful acts.

**WHEREFORE,** Plaintiffs demand judgment as follows:

a. For compensatory damages on behalf of Yasmeen Daniel, in an amount to be determined at a trial of this matter;

b. For compensatory damages on behalf of the Zina Daniel Haughton Estate, in an amount to be determined at a trial of this matter;

c. For punitive damages on behalf of Yasmeen Daniel, in an amount to be determined at a trial of this matter;

d. For punitive damages on behalf of the Zina Daniel Haughton Estate, in an amount to be determined at a trial of this matter;

48

e.  In the alternative, for an order enjoining or abating the public nuisance;

f.  For any and all equitable relief that may be justified;

g.  For all costs, disbursements and actual attorneys' fees, and all interest due and

owing pursuant to Wis. Stat. § 628.46.

**PLEASE TAKE NOTICE THAT PLAINTIFFS DEMAND A TRIAL BY A**

**TWELVE-PERSON JURY IN THE ABOVE-ENTITLED ACTION.**

Dated at Brookfield, Wisconsin this 21st day of October, 2015.

<div style="margin-left:40%">

**CANNON & DUNPHY, S.C.**
Attorneys for Plaintiffs

By:  /s/ Patrick O. Dunphy
Patrick O. Dunphy
State Bar No. 1016947
Brett A. Eckstein
State Bar No. 1036964

</div>

**P.O. ADDRESS:**
595 North Barker Road
P.O. Box 1750
Brookfield, WI 53008-1750
Telephone: (262) 796-3701
Fax: (262) 796-3711

Co-Counsel for Plaintiffs (pending admission *pro hac vice*):

Jonathan E. Lowy
Alla Lefkowitz
Kelly Sampson
**BRADY CENTER TO PREVENT GUN**
**VIOLENCE LEGAL ACTION PROJECT**
840 First Street, NE
Suite 400
Washington, D.C. 20002
Telephone:    (202) 870-8104

49

Jacqueline C. Wolff
Arunabha Bhoumik
Nirav S. Shah
Samantha J. Katze
**MANATT, PHELPS & PHILLIPS, LLP**
7 Times Square, New York, NY 10036
Telephone:    (212) 790-4500