# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

YASMEEN DANIEL, individually,
and as Special Administrator of
the ESTATE OF ZINA DANIEL
HAUGHTON,

Plaintiffs,

-vs-                                                    Case No. 15-C-1387

ARMSLIST, LLC,
BRIAN MANCINI,
BROC ELMORE,
JONATHAN GIBBON,
DEVIN LINN,
ABC INS. CO., DEF INS. CO.,
ESTATE OF RADCLIFFE HAUGHTON,

Defendants.

## DECISION AND ORDER

This action arises from the October 21, 2012, mass shooting at the
Azana Spa and Salon in Brookfield, Wisconsin. On that date, Radcliffe
Haughton killed his wife, Zina Daniel Haughton, two of his wife's co-
workers, and himself, wounding four others. Haughton bought the murder
weapon through Armslist.com, an online marketplace for the sale and
purchase of firearms, even though he was not allowed to possess a firearm
pursuant to a domestic violence restraining order.

Yasmeen Daniel, Zina's adult daughter from a previous marriage,

was at the spa and witnessed the carnage. Daniel brought suit in Milwaukee County Circuit Court against Armslist and its owners, Brian Mancini, Broc Elmore, and Jonathan Gibbon. Daniel also sued Devin Linn, a Wisconsin resident that sold the murder weapon to her stepfather, and her stepfather's estate. Daniel alleges, as relevant here, that Armslist aided and abetted the unlawful sale and possession of a firearm in violation of state and federal law. The Armslist defendants removed from state court, and Daniel now moves to remand. This motion is granted.

## BACKGROUND

The following facts are taken from the complaint and accepted as true for purposes of this motion.

On October 3, 2012, Radcliffe Haughton assaulted Zina Daniel Haughton in their home. In response to a 911 call, police from the Brown Deer Police Department arrived and escorted Zina to a local Holiday Inn to protect her from further violence. The following day, Brown Deer police took Zina back to her home to retrieve some personal items, after which she drove to work at Azana.

That same day, Radcliffe appeared in Azana's parking lot with a knife and confronted Zina, who took shelter in the salon. Left in the parking lot, Radcliffe slashed the tires of Zina's car. Later that day, Brown

- 2 -

Deer police arrested Radcliffe for domestic violence, criminal damage to property, and disorderly conduct.

The next day, Zina signed a 72-hour contact prohibition against Radcliffe, requiring him to avoid contacting her other than through a law enforcement officer or an attorney. On October 8, Zina filed a petition for a restraining order in Milwaukee County. The court issued a temporary restraining order while the matter was pending. On October 18, Radcliffe and Zina attended a hearing to adjudicate the petition. Zina told the court that Radcliffe's threats terrorized her "every waking moment." Brown Deer police officers also testified in favor of Zina. The court granted Zina's petition and prohibited Radcliffe from approaching his wife for four years, the maximum allowed under Wisconsin law. The court also prohibited Radcliffe from possessing a firearm until October 18, 2016, finding "clear and convincing evidence" that he might use a firearm to harm Zina and endanger public safety.

Federally licensed firearms dealers are required to conduct background checks on gun buyers to prevent sales to individuals prohibited from possessing firearms. In enacting this requirement, Congress recognized and sought to address the inherent danger to the public posed by certain individuals possessing firearms. Unlicensed private sellers, who

are not engaged in the business of selling firearms, are not required to conduct background checks under federal law.

Private sales over the internet are frequently linked to illegal gun trafficking, sales to minors, and mass shootings, such as those that took place at Virginia Tech, a Navy recruiting center in Chattanooga, Tennessee, and Northern Illinois University. As a result, many websites have prohibited private gun sales, including ebay, Craigslist, Amazon.com, and Google AdWords.

In the marketplace created by Armslist, any putative buyer can post a description of the firearm they wish to purchase and any seller can post a description of the firearm they wish to sell. Armslist's customers contact one another through Armslist's server by clicking on a link in their website or using their counterparty's contact information. Armslist receives revenue through advertising, so the more gun transactions that occur, the more money Armslist makes.

Several of the most significant design features of Armslist.com assist prohibited purchasers in evading federal and state laws while acquiring firearms. For example, Armslist provides the data fields which its customers fill out when they create "want to buy" or "for sale" posting. For sellers, one of the most prominent data fields is whether a seller is a

- 4 -

"premium vendor" (that is, a purportedly licensed gun dealer) or a "private seller." Similarly, for a purchaser posting a "want to buy" advertisement, Armslist offers a "seller" data field for them to specifically identify whether they would prefer to purchase from a private party as opposed to a licensed dealer. Armslist also has a search function that allows buyers to search for only private sellers. Armslist does allow users to flag advertisements for review and policing, but expressly prevents users from flagging content as criminal and illegal. Users are not required to register an account, thereby encouraging anonymity, and Armslist prominently displays on each advertisement whether the account is registered or unregistered.

Radcliffe Haughton's search for firearms took place exclusively on Armslist.com and made use of the search function to exclude licensed dealers. On October 19, 2012, Haughton found an Armslist.com offer of sale posted by Linn for a used FNP-40 semiautomatic handgun with three high-capacity magazines of ammunition. The advertised cost was $500, more than it would normally cost for a legitimate buyer. Haughton emailed Linn using the contact function. On October 20, the day before the shooting, Haughton bought the gun from Linn in a McDonald's parking lot in Germantown, Wisconsin.

- 5 -

## ANALYSIS

Courts interpret removal statutes narrowly with the implicit understanding that a plaintiff is free to choose his forum. *Kenosha Unified Sch. Dist. v. Stifel Nicolaus & Co., Inc.*, 607 F. Supp. 2d 967, 973 (E.D. Wis. 2009). Doubts regarding subject matter jurisdiction are resolved in favor of remand. *Id.* (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)).

The Armslist defendants invoke federal question jurisdiction. 28 U.S.C. § 1331. A case arises under federal law in two ways. *Evergreen Square of Cudahy v. Wis. Housing & Econ. Dev't Auth.*, 776 F.3d 463, 465 (7th Cir. 2015) (citing *Gunn v. Minton*, --- U.S. ---, 133 S. Ct. 1059, 1064 (2013)). "Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Id.* This "accounts for the vast bulk of suits that arise under federal law." *Id.* But where "a claim finds its origins in state rather than federal law," the Supreme Court has "identified a special and small category of cases in which arising under jurisdiction still lies." *Id.* at 465-66. In this category, courts ask whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial

- 6 -

responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). This inquiry "rarely results in a finding of federal jurisdiction," but "rarely" differs from "never." *Evergreen Square*, 776 F.3d at 466 (citing *Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1033 (7th Cir. 2014)).

Daniel brings eleven claims: (1) negligence; (2) negligence per se; (3) negligent entrustment; (4) negligent infliction of emotional distress; (5) civil conspiracy; (6) aiding and abetting tortious conduct; (7) public nuisance; (8) wrongful death; (9) piercing the corporate veil; (10) assault; and (11) battery. These are state law causes of action.

Even so, Armslist argues that Count VI arises under federal law because it alleges a violation of federal *criminal* statutes: the aiding and abetting statute, 18 U.S.C. § 2, and 18 U.S.C. § 922(d), which makes it unlawful to sell a firearm to certain persons, including one (such as Radcliffe Haughton) who is subject to a domestic violence restraining order. Neither statute creates a federal *civil* cause of action. *See, e.g., Alcante v. HRB Tax Group, Inc.*, No. 11-cv-125, 2011 WL 2729191, at *1 (N.D. Ind. 2011) (18 U.S.C. § 2 is a "criminal statute[] that do[es] not create private rights of action"); *Bannerman v. Mountain State Pawn, Inc.*, No. 10-cv-46, 2010 WL 9103469, at *7 (N.D.W.V. Nov. 5, 2010) ("the language, legislative

- 7 -

history, and purpose of § 922 do not create a substantive federal right of the plaintiff to recover damages"). Accordingly, Armslist must demonstrate that Daniel's claims "turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.

In this respect, Armslist argues that Counts II and VI raise substantial federal questions by seeking to impose liability for violating federal criminal statutes. This argument wrongly presumes that Daniel cannot prevail on these claims unless she proves a violation of federal law. To the contrary, in Count II (negligence per se), Daniel alleges that the Armslist Defendants and Linn "violated federal, *state, and local statutes*, regulations, and ordinances, including *without limitation* by aiding and abetting the unlawful possession of a firearm pursuant to 18 U.S.C. § 2 and 18 U.S.C. § 922(g),[1] *and endangering safety by use of a dangerous weapon pursuant to Wis. Stat. § 941.20(1).*" Complaint, ¶ 141 (emphases added). Thus, Count II does not "necessarily raise a stated federal issue …" *Grable*, 545 U.S. at 314. Similarly, Count VI alleges that the Armslist defendants aided and abetted (1) a § 922(d) violation, (2) the negligent entrustment of

---

[1] § 922(g) makes it illegal for certain persons to possess or transport firearms – those persons to whom it is illegal to sell firearms under § 922(d).

the murder weapon by Linn to Radcliffe Haughton, and (3) the negligent and reckless operation of Armslist.com. Complaint, ¶¶ 172-74. The latter two theories are creatures of state law, not disputed federal issues.

Armslist argues further that Count VI contains two separate claims, one state and one federal, not alternative theories of liability. This is wrong because Count VI is premised upon the same conduct: "acting in concert to broker the transaction between a dangerous, prohibited purchaser, Radcliffe Haughton, and Linn, shifting the responsibility of vetting purchasers to Linn, whom the Armslist Defendants knew or should have known would be unqualified to perform such vetting, and otherwise acting recklessly and negligently." Complaint, ¶¶ 172, 174. "A 'claim for relief' seeks redress of a distinct wrong; a distinct legal underpinning differs from a new claim …" *N.A.A.C.P. v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 291 (7th Cir. 1992); *see also Broder v. Cablevisions Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) ("One of the key characteristics of a mere 'theory,' as opposed to a distinct claim, is that a plaintiff may obtain the relief he seeks without prevailing on it") (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810-13 (1988)).

Armslist also argues that Daniel is using federal aiding and abetting law couched as a state tort claim in an effort to impose a background check

- 9 -

requirement on private gun sales over the internet. Gun control is not exclusively a federal issue, evidenced by the fact that ten states and the District of Columbia already require background checks for private gun sales.[2] A ruling from a Wisconsin state court imposing liability in this case will not impose a nationwide rule, and thus will not intrude on any federal prerogative.[3]

Finally, Armslist cites the Communications Decency Act, 47 U.S.C. § 230, which creates a federal immunity to any cause of action that would make internet service providers liable for information originating with a third-party user of the service. *See Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). Armslist concedes that a federal defense does not create federal question jurisdiction, but argues that the CDA is further evidence of the important federal issues raised in this lawsuit. From there it does not follow that this case arises under federal law, as discussed herein.

---

[2] Cal. Penal Code §§ 27545, 27850; Colo. Rev. Stat. § 18-12-112; Del. Code tit. 11, § 1448B; N.Y. Gen. Bus. Law § 898; Or. Rev. Stat. § 166.438; Was. Rev. Code § 9.41.113; R.I. Gen. Laws §§ 11-47-35 to 11-47.35.2; Conn. Gen. Stat. §§ 29-33(c), 29-37a; D.C. Code Ann. § 7-2505.02; Md. Code Ann., Pub. Safety §§ 5-117, 5-118, 5-121, 5-124; Pa. Cons. Stat. § 6111.

[3] Federal law does not impose a background check requirement for private online sales, but President Obama recently announced his intention to issue an executive order targeting online marketplaces such as Armslist.com. http://www.npr.org/2016/01/06/462114352/obama-aims-to-expand-background-checks-to-online-gun-sales (accessed Feb. 12, 2016).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** plaintiff's motion to remand [ECF No. 19] is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 17th day of February, 2016.

BY THE COURT:

HON. RUDOLPH T. RANDA
U.S. District Judge